

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

Renee Mason and all similarly situated persons     **PLAINTIFFS**

v.     No. 5:16-cv-36 DCB-MTP

Dr. Alton J. Hall, d/b/a Animal Medical Center,     **DEFENDANTS**
d/b/a Vaccine Wholesale, d/b/a Natchez Animal
Supply Center, d/b/a National Animal     (JURY TRIAL DEMANDED)
Identification Center; Low Cost Vaccinations LLC;
and John Does 1-15.

## COMPLAINT

This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, brought by employees of a veterinarian. In addition to regular weekly work paid by the hour, the employees had to work various amounts of overtime "off the books" on weekends for a fixed sum. In support thereof, COME NOW THE PLAINTIFFS, on behalf of themselves and all others similarly situated, by and through their attorney, and allege as follows:

### JURISDICTION, VENUE, JURY TRIAL

1. Jurisdiction is proper in this court under 28 U.S.C. § 1331 because this claim arises under the FLSA, 29 U.S.C. § 216.

2. Venue is proper in this court under 28 U.S.C. § 1391 because the work is based out of Adams County, Mississippi.

3. Plaintiff hereby demands trial by jury on all issues so triable.

## PARTIES

4. Named Plaintiff Renee Mason is an adult resident of Clayton, Louisiana, working for Defendants in Mississippi, Louisiana and Texas.

5. Named Plaintiff is representative of both the class and the collective group of "whole-week employees" defined as "all persons who worked both during the week and on weekends for Dr. Alton J. Hall and/or related entities, at any time between three years prior to the filing of this Complaint and the entry of judgment in this case." The term "Plaintiffs" is used herein to refer to the group of both named and un-named collective plaintiffs.

6. Plaintiffs are covered by the minimum wage and overtime provisions of the FLSA in their work for Defendants.

7. Defendant Dr. Alton J. Hall, is an adult resident of Adams County, Mississippi.

8. Dr. Hall is doing business as, among other things, "Animal Medical Center," "Vaccine Wholesale," "Natchez Animal Supply Center," and the "National Animal Identification Center," and has his principal place of business in Adams County, Mississippi. In addition to his veterinarian's work, Dr. Hall sidelights as a restaurateur, landlord, and pecan dealer.

9. Dr. Hall can be served at 201 John R. Junkin Drive, Natchez, MS 39120.

10. Defendant Low Cost Vaccinations LLC, is a Mississippi entity controlled by Dr. Hall.

11. Low Cost Vaccinations lists as its NAICS code in official filings "541940 - Veterinary Services."

12. Low Cost Vaccinations can be served at its registered agent address, which is listed as follows: Bobby L. Cox, 604 Franklin St, PO Box 892, Natchez, MS 39121-0892.

13. Defendants John Does 1-15 are persons or entities unknown who are statutory employers or employers' agents employing Plaintiffs. As the identity of such persons becomes known, this Complaint will be amended to add them by name.

14. Dr. Hall freely assigns his employees tasks for many or all of the various enterprises he is pursuing, which are essentially integrated.

15. Defendants are either joint employers, alter egos, integrated enterprises, or are otherwise agents in employing the Plaintiffs, and are jointly and severally liable for the acts complained of herein.

## COVERAGE/INTERSTATE COMMERCE

16. Low Cost Vaccinations is subject to "enterprise" coverage under the FLSA.

17. Low Cost Vaccinations has over $500,000 per year in gross receipts.

18. Specifically, in 2015, Low Cost Vaccinations had approximately $1,200,000 in gross receipts.

19. Low Cost Vaccinations has operations in Mississippi, Louisiana, and Texas.

20. Dr. Hall is subject to "enterprise" coverage under the FLSA.

21. Dr. Hall has over $500,000 per year in gross receipts from his unincorporated enterprises.

22. Dr. Hall has operations in Mississippi, Louisiana, and Texas.

23. In the alternative, Plaintiffs have worked in interstate commerce covered by the FLSA in every work week at issue.

24. Specifically, the work at issue here always involved crossing state lines from the work site in Natchez, Mississippi to remote work sites in Louisiana and Texas, as described in greater detail below.

25. In addition, portions of the work involved shipping vaccines and medications all over the country.

## FACTS

26. Defendants operated seven days a week.

27. Defendants did not hire anyone for exclusively weekend work.

28. Plaintiffs were hired explicitly to work on both weekdays and weekends for Defendants - they were both part of the same job.

29. For every employee that did weekend work, doing so was a condition of keeping the weekday work as well.

30. The assigned weekend work was a permanent part of the overall job - the same employees worked every weekend, week in and week out.

31. Dr. Hall fired employees from all work for him if they missed weekend work.

32. This included, for example, Andrya Perrite, who was fired because she could not work a particular weekend on or around October or November of 2015.

33. Until on or around February 2015, Plaintiffs were paid approximately $7.25 per hour for work on weekdays.

34. On or around February 2015, Plaintiffs were paid approximately $8.00 per hour for work on weekdays.

35. A handful of Plaintiffs were paid a few cents more – *e.g.*, Renee Mason was paid $9.00 per hour.

36. Throughout the entire time period in question, the pay rate for all Plaintiffs was explicitly hourly, and appears so on pay stubs, with lesser amounts paid in weeks with fewer hours worked.

37. No Plaintiff was paid on a salary basis.

38. No Plaintiff made more than $9 per hour.

39. On Monday through Friday, Plaintiffs routinely worked at least 40 hours.

40. Any weekday hours over 40 were generally worked "off the clock."

41. Plaintiffs also worked on Saturdays and Sundays.

42. Time spent working on Saturdays and Sundays was not tracked and compensated by Defendants.

43. Defendants claimed to pay Plaintiffs $30 "per location" for work on Saturdays and Sundays.

44. The economic reality is that Plaintiffs are not in business for themselves, and are dependent upon the employment of Defendants.

45. Defendants engage in advertising and marketing online and otherwise of the business, and exclusively own all intellectual and trade property of the business operation.

46. Defendants name, reputation, and licensure as a veterinarian contribute to Plaintiff's opportunity for profit and loss in the business.

47. Defendants' website advertises this weekend work. On the header of the site is prominently stated: "All services conducted by a licensed veterinarian" – referring to Dr. Hall. Exhibit 1, http://lowcostvaccination.com/ (Apr. 27, 2015)

48. None of the Plaintiffs are licensed veterinarians. Plaintiffs work does not require any advanced degree or advanced knowledge in veterinary care.

49. Plaintiffs primary duties on the weekend are to provide unskilled assistance to the veterinarian in giving care.

50. Plaintiffs often are hired without any prior background in veterinary services, and begin providing the services at issue without any formal training or certification from any recognized institution.

51. Defendants closely supervise and control the work of Plaintiffs.

52. Defendants do not give Plaintiffs authority to exercise any independent judgment in performing their weekend work.

53. Defendants have invested in office space and field treatment space, veterinary supplies, company vans and trailers, and other capital investments necessary to the business.

54. Plaintiffs handle exclusively the Defendants' own tools, and do not make any investment whatsoever in tools of the trade or business.

55. Defendants control the opportunities for profit and loss.

56. Plaintiffs cannot schedule new locations or give vaccination clinics on their own, without Defendants.

57. Through choice of location and hours, Defendants provide the primary means of access to services.

58. The relationship between Defendants and Plaintiffs is permanent and regular.

59. Defendants assigned Plaintiffs to work during the week and on weekends on a regular and routine basis, generally over the course of many months and years.

60. On Saturdays and Sundays, the workday would begin when Plaintiffs arrived at the Natchez office of Defendants.

61. Plaintiffs would begin work by loading up and hitching company vans and trailers in Natchez.

62. Plaintiffs would drive the vehicles to various locations in Louisiana and Texas.

63. Once arrived at these locations, Plaintiffs would unload the trailers and vans and set up three or four "stations" for assisting customers.

64. Plaintiffs worked each of these various stations interchangeably with each other.

65. The first station was the "information" station where customers signed in and ordered services. Two employees worked at this station, helping customers with paperwork.

66. The second station (used on Saturdays only), was the weigh station, where one employee would record the weight of the animals and monitor the queue.

67. The third station was the vaccine station, where two employees would assist Dr. Hall by handing him tools and medicines and restraining animals receiving treatments.

68. The fourth station was the check-out table, where one employee worked to receive payment.

69. After the work at that location was finished, the stations would be packed up and the Plaintiffs drive to a different location to continue working.

70. Two to four locations were generally worked in a day.

71. The work was regularly scheduled.

72. The schedule is advertised on the front page of the website. (Exhibit 1)

73. Specifically, there were three kinds of weekends: Gray weekends, Metiairie weekends, and Texas weekends.

74. On Gray Saturdays, employees would arrive at the Natchez office at about 3:30 A.M., and would work at two Louisiana sites - Gray and then Harvey - returning

to Natchez at about 8 pm.

75. On Gray Sundays, employees would arrive at the Natchez office at about 7:00 A.M., and work at two Lousiana sites - West Monroe and then Shreveport – arriving back at Natchez at about 10 pm.

76. At the end of the day on Gray Sundays, employees were given a check for $120 each for the whole weekend's work.

77. On Metierie Saturdays, employees would arrive at the Natchez office at about 4:30 am, and work at two Louisiana sites – Metierie and then Gonzalez – arriving back at Natchez at about 9 pm.

78. On Metierie Sundays, employees would arrive at the Natchez office at about 9 am, and work at two Louisiana sites – Zachary and Denham Springs – arriving back at the Natchez office at about 8 pm.

79. At the end of the day on Metierie Sundays, employees were given a check for $150 each for the whole weekend's work.

80. On Texas weekends, employees would leave Natchez on Friday at 12 pm and travel to Texas and stay at a hotel for the night.

81. On Texas Saturdays, employees would load into the vans at 6 am, and work at four Texas locations – Beaumont, Nederland, Orange, and Lake Charles – before stopping for the night at a hotel about 10 pm.

82. On Texas Sundays, employees would load the vans at 8 AM and work at three

Louisiana locations - Abbeville, Breauxbridge, and Opelousas, LA – arriving back at the Natchez office at about 8:30 pm.

83. At the end of the day on Texas Sundays, employees were given a check for $210 each for the whole weekend's work.

## CAUSES OF ACTION

### COUNT 1: Fair Labor Standards Act wage violations

84. Plaintiffs incorporate all allegations set forth in all other sections of this complaint.

85. Plaintiffs are employees protected by the minimum wage and overtime provisions of the FLSA.

86. The Plaintiffs are entitled to be compensated at a rate of at least $7.25 for every hour worked under 29 U.S.C. § 206.

87. Under 29 U.S.C. § 207, overtime of one and one-half times the regular rate must be paid for hours worked in excess of 40 in a given work week.

88. Defendants failed to pay minimum wages and overtime as required by the FLSA.

89. Defendants falsified and/or underreported the hours of work of Plaintiffs.

90. Defendants misclassified Plaintiffs as either exempt from the FLSA, or independent contractors, when Defendants knew or should have known that they are neither under well-established law.

91. Defendants' violations were willful within the meaning of 29 U.S.C. § 255.

92. Plaintiffs seek the full remedies provided by 29 U.S.C. § 216, including damages in the amount of their unpaid wages, liquidated damages, interest as applicable, and such other legal and equitable relief as may be proper.

93. Plaintiffs seek recovery of attorney's fees and costs under 29 U.S.C. § 216 and other applicable provisions of law and equity.

94. Plaintiffs wish to proceed as a collective action under 29 U.S.C. § 216 for this cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendants as follows:

a. Designate this action as a collective FLSA action;

b. Promptly issue notice pursuant to 29 U.S.C. § 216 to all similarly situated persons, apprising them of this action and providing individual consent forms;

c. Find that the Plaintiffs and their class members are "employees" under the FLSA;

d. Find that the Plaintiffs and their class members are covered and not exempt from the FLSA's minimum wage and overtime provisions;

e. Find that defendants violated the FLSA's minimum wage and overtime provisions;

f. Find that the aforesaid violations are willful;

g. Enter judgment against Defendants for an amount equal to the amount of unpaid

minimum wages and overtime;

h. Enter judgment under against Defendants for liquidated damages in an additional equal amount as prescribed by statute;

i. Award interest, costs, and attorney's fees; and

j. Award all other relief available in the interest of justice.

The foregoing Complaint is respectfully submitted on behalf of Plaintiffs and all similarly situated persons by and through counsel:

_/s/ Joel Dillard_ Date: 5-6-16

Joel Dillard
JOEL F. DILLARD, PA
405 Tombigbee St.
Jackson, MS 39201
Ph: 601-487-7369
Fax: 601-487-1110
Email: joel@joeldillard.com
M.S. Bar No. 104202
*Counsel for Plaintiffs*